## Pittsburgh School District Condemnation Case.

Argued April 17, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused August 5, 1968.

*Justin M. Johnson,* Assistant School Solicitor, with him *Niles Anderson,* School Solicitor, for appellant.

*Wilbur F. Galbraith,* with him *Edgar J. Cooke,* for appellees.

OPINION BY MR. JUSTICE EAGEN, July 1, 1968:

These appeals are from orders of the Court of Common Pleas of Allegheny County sustaining preliminary objections to declarations of taking filed by the School District of Pittsburgh.

On June 21, 1966, the Board of Public Education of the School District of Pittsburgh [hereinafter Board] passed a resolution authorizing the filing of declarations of taking for the involved properties. The resolution states that the taking is "for the public school purposes of providing necessary, useful and convenient parking facilities for school district employees and visitors to the School Administration Building, adequate facilities not being otherwise available, and for the additional public school purpose of acquiring a building site for desired and necessary future expansion of administrative facilities, in order to avoid excessive cost and waste of public funds if acquisition is delayed." After the filing of the declarations of taking, the condemnees filed preliminary objections which were answered by the Board. The condemnees then served written interrogatories on the Board and later secured an order for discovery by deposition. In answer to the interrogatories, the Board stated that no plans had been drawn for future buildings on the involved

properties and that the Board had not formally author-
ized the drawing of any such plans. The depositions
of the Board's long range planning committee also in-
dicate that plans for building expansion are unformed
and only in the conversational stage. No hearing was
held and no evidence was taken on the issues of fact
raised by the preliminary objections. Oral argument
on the preliminary objections was limited, with the
Board's consent, to the question of whether or not the
Board has the power to condemn property for parking
facilities. The lower court sustained the preliminary
objections solely because it concluded that the Board's
condemnation power does not extend to the acquisition
of land for parking facilities for administrative em-
ployees.

The Board's condemnation power flows from the
Act of March 10, 1949, P. L. 30, §701 et seq., 24 P.S.
§7-701 et seq. Section 703, 24 P.S. §7-703 provides: "In
order to comply with the provisions of this act, and sub-
ject to the conditions thereof, the board of school di-
rectors of each district is hereby vested with the nec-
essary power and authority to acquire, in the name of
the district, by purchase, lease, gift, devise, agreement,
condemnation, or otherwise, any and all such real es-
tate . . . as the board of school directors may deem
necessary to furnish suitable sites for proper school
purposes for said district. . . ."

Section 721, 24 P.S. §7-721 provides: "Whenever
the board of school directors of any district cannot
agree on the terms of its purchase with the owner or
owners of any real estate that the board has selected
for school purposes, such board of school directors,
after having decided upon the amount and location
thereof, may enter upon, take possession of, and oc-
cupy such land as it may have selected for school
purposes, whether vacant or occupied, and designate

and mark the boundary lines thereof, and thereafter may use the same for school purposes according to the provisions of this act. . . ."

The precise issue presented here is whether the lower court correctly determined that the acquisition of land for parking facilities for employees and visitors to the School Administration Building is not a "proper school purpose" within the meaning of the Act of March 10, 1949, supra.

In interpreting the statute we must, of course, bear in mind that provisions conferring the power of eminent domain must be strictly construed. Act of May 28, 1937, P. L. 1019, §58, 46 P.S. §558. Strict construction does not require, however, that a statute be construed as narrowly as possible, or that it be construed so literally and without common sense that its obvious intent is frustrated. *Commonwealth v. Shafer,* 414 Pa. 613, 202 A. 2d 308 (1964); *Commonwealth v. Mason,* 381 Pa. 309, 112 A. 2d 174 (1955); *Commonwealth ex rel. Dugan v. Ashe,* 342 Pa. 77, 19 A. 2d 461 (1941).

A close examination of §703 of the Act of March 10, 1949, supra, indicates that the power and authority of the Board to acquire real estate is limited to acquisition "for proper school purposes" not only when the acquisition is by condemnation, but also when it is by "purchase, lease, gift, devise, agreement . . . or otherwise." Thus, if the Board cannot condemn real estate for the purpose of using it as a parking lot, it apparently cannot lease, purchase or otherwise acquire real estate for parking purposes. To deny the Board this power is serious not only because off street parking usually is desirable for buildings located in congested urban areas, but also because this Court has held that a school board may be compelled to comply with a zoning ordinance requiring provision for off street park-

ing in the erection of a new building. *School District of Philadelphia v. Zoning Board of Adjustment,* 417 Pa. 277, 207 A. 2d 864 (1965).[1]

In approaching the question of whether or not the legislature intended to deny the Board this power, it is significant that the phrase "proper school purposes" in §703 of the Act of March 10, 1949, supra, replaced the phrase "school buildings and play grounds" in §602 of the Act of May 18, 1911, P. L. 309. This substitution, fairly read, not only left the Board's power less precisely defined, but also broadened it somewhat. Thus the acquisition of a building to be used solely for administration undoubtedly is for a proper school purpose[2] although an administration building may not be unquestionably within the term "school building," which could be read to imply a school house where classes are held.

We think that the acquisition of land for off street parking for school district facilities, including an administration building, is for a "proper school purpose."[3] With particular reference to an administration building, there are two obvious reasons why numerous automobiles are incident to its operation. First, superintendents and supervisors who have central offices in an administration building must have occasions when duty requires their presence in scattered parts of the school district. The availability and effectiveness of these professionals, no doubt, is greatly enhanced by their use of automobile transportation.

---

[1] Although the School District acquired land involved in this case by condemnation, the question of whether or not it had the power to do so was not before the court.

[2] Accord: *Smith v. City Board of Education of Birmingham,* 272 Ala. 227, 130 So. 2d 29 (1961).

[3] Cf. *Radcliffe College v. City of Cambridge,* 350 Mass. 613, 215 N.E. 2d 892 (1966); *Missouri ex rel. Curators of the Univ. of Missouri v. Neill,* 397 S.W. 2d 666 (Mo. 1966).

Second, teachers, principals and other staff scattered throughout the school system must have occasions when they are required to attend meetings together in the central administration building. To do so without an excessive investment in time, they frequently will have to use automobile transportation. With reference to any school district facility, automobiles will be incident to its operation for other reasons. For instance, professionals, as well as secretarial, clerical and maintenance staff, may not accept employment unless they can commute to and from work by automobile. This might be common in areas where public transportation does not serve either the employee's home or the school district's facility. Even where public transportation is available, we must recognize that today a great part of the public is unwilling to use it because they are almost addicted to the convenience and independence provided by the automobile. Since automobiles are a necessary incident to the operation of school district facilities, off street parking is a practical necessity. The streets simply are not adequate and sometimes are not available for parking. Consequently, the acquisition of land for off street parking, which is a practical necessity to the effective and efficient operation of a school system, is certainly a "proper school purpose." To interpret the statute any more narrowly would be to frustrate its obvious intent to delegate to the Board authority to discharge the legislature's constitutional obligation to provide for an efficient public school system.[4]

---

[4] Pa. Constitution, Article X, §1: "The General Assembly shall provide for the maintenance and support of a thorough *and efficient system of public schools,* wherein all the children of this Commonwealth above the age of six years may be educated, and shall appropriate at least one million dollars each year for that purpose." (Emphasis added.)

The court below sustained the preliminary objections, incorrectly as we have determined, solely because it concluded that acquisition of land for parking facilities is not a "proper school purpose." The condemnees' preliminary objections raised other issues, however, which deserve comment.

The condemnees object because the declarations of taking contain no allegation of an effort by the Board to negotiate a purchase and because there never has been a bona fide effort on the part of the Board to negotiate a purchase. The Board's answers deny that there never have been bona fide efforts to negotiate a purchase of condemnees' properties. Even if the allegations of the condemnees are accepted as true, under the new Eminent Domain Code it no longer is necessary that the declarations of taking contain an allegation of an effort to negotiate a purchase or that there be such an effort. Act of June 22, 1964, P. L. 84, Art. IV, §402, 26 P.S. §1-402.

The condemnees challenge the Board's right to condemn their properties for future expansion or to avoid excessive costs and waste of public funds if acquisition is delayed. This Court long has recognized that a condemnor may have the right to acquire land for future expansion.[5] E.g., *Fayette County Commissioners' Petition*, 289 Pa. 200, 137 A. 237 (1927); *Truitt v. Borough of Ambridge Water Authority*, 389 Pa. 429, 133 A. 2d 797 (1957). A logical corollary of this right is that one of the condemnor's motives for presently acquiring land needed for future expansion may be to avoid excessive costs and waste of public funds if acquisition is delayed. Indeed, in some circumstances, a foresighted concern for avoiding excessive cost can

---

[5] The Public School Code itself contemplates advance acquisition of land for future expansion. Act of Sept. 12, 1961, P. L. 1268, §3 as amended, 24 P.S. §25-2574.1.

properly be the major motive. See *Upper Providence Township Condemnation*, 88 Montg. Co. L. R. 22, 25 (1967).

Of course the acquisition of land not presently needed cannot be for real estate speculation and future sale. Unless the property is acquired for an authorized public use, and after a suitable investigation leading to an intelligent, informed judgment by the condemnor, the condemnation is invalid. *Winger v. Aires*, 371 Pa. 242, 89 A. 2d 521 (1952). The last group of condemnees' preliminary objections invoke these principles. The condemnees charge that the Board has rented land adjacent to their property to a third party for use as a public parking lot which shows that their own properties are not needed by the Board for parking; further, the condemnees charge that the Board is not condemning their property for school purposes, but for undisclosed speculative purposes and for the benefit of undisclosed parties who do not have the power of condemnation; finally, the condemnees charge that the action of the Board is arbitrary and capricious.

The opinion of the lower court appears to lend some support to the last of these objections. It says: "We feel that the action of the School Board was arbitrary, injudicious and an action properly subjected to attack by the property owners." We do not understand this comment to represent a formal conclusion that the Board's action was arbitrary and capricious, however, because the opinion expressly says that "we are sustaining the preliminary objections *for the sole reason* that we do not consider the acquisition of land for parking facilities for administrative employees as equivalent to acquisition for school purposes."

Although the lower court did not discharge its clear and express duty under the Eminent Domain Code to "determine *promptly all* preliminary objections," the

Act of June 22, 1964, supra, §406(e), 26 P.S. §1-406(e) (Emphasis added.), particularly the ones alleging that the Board's action was fraudulent, arbitrary and capricious, we ourselves feel constrained to dismiss these preliminary objections. The condemnees' burden of proving fraud or abuse of discretion is a heavy one. See *Washington Park, Inc. Appeal*, 425 Pa. 349, 229 A. 2d 1 (1967); *Hibbs v. Arensberg*, 276 Pa. 24, 119 A. 727 (1923). The present record does not satisfy that burden. The condemnees should not be permitted to add to the record evidence which, if it exists, should have been introduced at a hearing on the preliminary objections. The Board diligently noted by motion the lower court's obligations under the Eminent Domain Code to take evidence on issues of fact raised by the preliminary objections. Act of June 22, 1964, P. L. 84, Art. IV, §406(e), 26 P.S. §1-406(e). The condemnees failed to come forward with any evidence. To delay these condemnations for additional hearings and appeals would serve only to reward the condemnees for their failure to pursue the proper procedure established by the Eminent Domain Code.

Reversed with directions to enter an order appointing a board of viewers upon petition of either party in accordance with §§502, 504 of the Eminent Domain Code, 26 P.S. §§1-502, 1-504.