Condemnation of Lands of Ronald Stubbs and Ella Mae Stubbs, His Wife, Located in Snyder Township, Jefferson County, Pennsylvania, by the Township of Snyder To Widen a Narrow Road. Ronald Stubbs and Ella Mae Stubbs *v.* The Township of Snyder, Jefferson County, Pennsylvania, Fred Whelpley, Ronald Pifer and John A. Ross, Supervisors. Ronald Stubbs and Ella Mae Stubbs, Appellants.

614

Argued May 4, 1976, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Kramer did not participate.

Paul J. Quattrone, for appellants.

David G. Matson, for appellees.

Opinion by President Judge Bowman, July 30, 1976:

Did the court below err as a matter of law in concluding that the contested action of local government

officers was not taken arbitrarily or in bad faith? This is the narrow issue posed in this appeal but framed in an unusual factual setting.

Township Road T-644 is a dead end dirt road in Snyder Township, Jefferson County. Appellants, Ronald and Ella Mae Stubbs (Stubbs), are owners of property containing 2.14 acres of land on the north side of this road and fronting along that side of the road for a distance of 623.5 feet. A dispute arose between the Stubbs and the Supervisors of Snyder Township (Supervisors) concerning the exact location of the road vis-a-vis the Stubbs' property, the Stubbs asserting that the traveled portion of the road encroached upon their property,[1] notwithstanding that the traveling public had so used it for many years.

The dispute remaining unresolved, the Stubbs initiated an action in ejectment resulting in a jury verdict in their favor, the jury having concluded that the disputed land area was owned by the Stubbs and not within the right-of-way line of the road. The Stubbs then placed stakes, connected by strings, delineating their property line and the northern boundary of the road as found by the jury. Thereafter, the Supervisors, acting pursuant to Section 1120 of The Second Class Township Code, 53 P.S. §66120, condemned for road purposes the disputed land area which the Stubbs had successfully established as being their property in the ejectment proceedings, the effect of said con-

---

[1] While the court below characterized the road as being of an *ordained* width of 33 feet, the record merely discloses testimony of a witness that the road was 33 feet in width (N.T.14). It may well have been so ordained or may be conclusively presumed to be deemed a public road of that width. *See* Sections 1103 and 1105 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§66103, 66105. In the latter case, the exact location of the road upon the ground as to its traveled portion, its centerline and the bounds of its right of way from the centerline frequently produce disputes not easily susceptible of proof.

demnation being to establish the location of the road within its right-of-way lines exactly as existed theretofore. By way of preliminary objections to the Supervisors' declaration of taking, the Stubbs' asserted their action to have been taken in bad faith and arbitrarily. The lower court found to the contrary and dismissed the preliminary objections after a hearing thereon. Hence this appeal.

This is not a case of an attack upon the exercise of the power of eminent domain as one for private purpose or gain, rather than a public purpose, nor do appellants so assert. Nor is it one of want of authority in law to act through the exercise of the power of eminent domain as such power manifestly reposes in second class township supervisors to condemn land for public road purposes. In essence, appellants would have us declare that the court below erred as a matter of law in not concluding that the Supervisors acted in bad faith or arbitrarily in that their motive or intent in condemning the disputed land was solely for retaliatory purposes. Appellants assert that such a conclusion must necessarily be reached because the ejectment proceedings conclusively established that a substantial portion of the width of its right-of-way on the south side of the road was unimproved but available for improvement for road purposes. In response, the court below opined that the inference of bad faith to be taken from such an argument was insufficient to overcome the presumption of good faith attributable to actions of public officials. It further observed that the physical location of the roadbed of a public road is primarily an engineering, maintenance and cost judgment decision to be made by the Supervisors.

We affirm. While the record is devoid of any proof that the Supervisors' action was preceded by an engineering study or cost estimates, it is equally devoid

of any evidence that the motivation of the Supervisors was that of retaliation. As we read the record, it merely discloses a practical decision on the part of the Supervisors to legally establish the road in the same physical location in which it existed before the ejectment proceedings. Nor does it necessarily follow that the ejectment proceedings conclusively established the south boundaries of the road in a contest between the owner or owners on that side of the road with the Supervisors. The possibility of further litigation with possible inconsistent results may have motivated the disputed action of the Supervisors, an inference as readily taken from the record as the inference appellants would have us attribute to such action.

The legal principles applicable to the issue here raised are found in *Weber v. Philadelphia,* 437 Pa. 179, 183, 262 A.2d 297, 299 (1970), in which it is stated:

''In this area of the law, certain principles are well settled and stem, in large measure, from judicial respect for the doctrine of separation of powers in government. First, it is to be presumed that municipal officers properly act for the public good (Robinson v. Philadelphia, 400 Pa. 80, 86, 161 A.2d 1, 5 (1960); Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446, 457, 160 A.2d 539, 545 (1960)). Second, courts will not sit in review of municipal actions involving discretion, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion (Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 572, 109 A.2d 331, 334-35 (1954); Hyam, supra, 399 Pa. at 457, 160 A.2d at 545). Third, on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the *wisdom* of municipal actions and *judicial* discretion should not be substituted for *administrative* discretion (Goodman Appeal, 425 Pa. 23, 30, 227 A.2d

816, 820 (1967); Parker v. Philadelphia, 391 Pa. 242, 249, 137 A.2d 343, 347 (1958)).'' (Emphasis in original.)

In this case, at best, bad faith or an abuse of discretion can be found only by inference from the action taken, an inference which the trier of the facts was not willing to take as overcoming the presumptive propriety of the action taken. On review, we cannot say that the court below erred as a matter of law in rejecting such an inference.

Just as judicial discretion should not be substituted for administrative discretion, a possible inference or deduction from facts not accepted by the trier of the facts should not be accepted by the appellate court unless clearly established by the record. We find no such clarity in this record as would enable us to independently conclude that the Supervisors in so acting were guilty of bad faith or an abuse of discretion.

The order of the lower court is affirmed.

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

It is a common human trait, when told that something cannot be done, to respond with the affirmation that ''we will see about that.'' Thereafter, we often endeavor to retaliate to the initial admonition by finding some way to accomplish our desires.

When elected public officials react in this manner, it is not sufficient justification of their actions to call forth the usual presumption that municipal officers properly act for the public good or to reiterate that the exercise of the powers given them by law is solely discretionary and is only subject to a very limited judicial review.

As the majority correctly stated, Township Road No. T-644 is a dead-end dirt road in Snyder Township,

Jefferson County. Ronald and Ella Stubbs (Stubbs) are the owners of a lot containing approximately 2.14 acres of land, situate north of this dirt road and fronting for a distance of 623.5 feet along the northern right-of-way line of the road in question. A dispute arose between the Stubbs and the Supervisors of Snyder Township (Supervisors) concerning the correct location of Township Road No. T-644 (dirt road).[1]

Stubbs commenced an action in ejectment to oust the Supervisors from using a portion of allegedly their property for a public highway. A jury returned a verdict in favor of Stubbs and determined that the land in question was owned by Stubbs and was outside of the ordained right-of-way of the dirt road. Thereafter, Stubbs placed stakes connected by string along that portion of the established dirt road which the jury had determined belongs to Stubbs.

How did the Supervisors react to this legal determination that they could no longer use Stubbs' land for a public road? They reacted in the human way that one might expect. They simply, with a we-will-see-about-that attitude, responded to the legal defeat by exercising their power of eminent domain and condemned the exact portion[2] of Stubbs' land that had been the subject of the ejectment proceeding.

I agree with the majority that a summary of the legal principles applicable here is found in *Weber v. Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970).

Section 1120 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §66120, being the authority under which the Super-

---

[1] Township Road T-644 has a right-of-way width of 33 feet. N.T. 14.

[2] The Supervisors described the land condemned by the same metes and bounds as the area that was in dispute in the ejectment proceeding. This fact of itself would not be crucial if the record supported a need for the taking.

visors proceeded in this case, provides, *inter alia*, that "[a]ny township may acquire, by purchase or by the right of eminent domain, any such property and lands situate along or adjacent to any township road, as, in the opinion of the supervisors of such township, may be necessary to eliminate dangerous curves and widen narrow roads for the better protection and safety to the traveling public."

Stubbs do not question here that the Supervisors have the power by this statute to take private property to widen narrow roads. However, they do challenge the extent of that power, and under the factual setting of this case such a challenge brings to mind the following words found in *Winger v. Aires*, 371 Pa. 242, 244, 89 A.2d 521, 522 (1952):

"There is no authority under our form of government that is unlimited. The genius of our democracy springs from the bedrock foundation on which rests the proposition that office is held by no one whose orders, commands or directives are not subject to review. The power of eminent domain, next to that of conscription of man power for war, is the most awesome grant of power under the law of the land. Article 1, Section 10 of our Pennsylvania Constitution, declares: '. . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.'

"It is to be emphasized, however, that the restriction in this clause is not *limited* to the guarantee of just compensation. The condemnation may not take place at all without authority of law." (Emphasis in original.)

Also, Stubbs do not dispute the need to widen that portion of the dirt road, approximately 8 feet in width, remaining within the Township's 33-foot right-of-way. However, Stubbs contend that it was not necessary to

condemn their property when there remains 25 feet
of an existing right-of-way which was available to the
Supervisors for widening purposes. My reading of
the record fails to disclose any reason of substance
that would explain why the Supervisors chose con-
demning the exact land dealt with in the ejectment
proceeding rather than utilizing any portion of the
available unused existing right-of-way.

The trial court reasoned that, even if there exists
sufficient room within the existing right-of-way to
widen the road on the south side, it must "conclude
that the physical location of the roadbed is primarily
an engineering, maintenance and cost judgment which
the Supervisors have been given the statutory au-
thority to make." My reason for not reaching this
same conclusion is that the record does not support
that the Supervisors' decision to condemn Stubbs'
property was based on an "engineering, maintenance
and cost judgment." Rather, when Supervisor John
Ross was asked about the purpose of the condemna-
tion in question here, his reply indicated that it was
solely to condemn the area set forth in the jury ver-
dict in the ejectment action.[3]

---

[3] Mr. Ross testified as follows, on direct examination by coun-
sel for the Township: "Q. Now, that portion of the paved road that's,
for lack of a better term, barricaded or roped off or strung off,
that more or less represents the area that the jury found a couple
of years ago that was an area upon which the Township encroached
on the Stubbs' property, is that correct? A. Yes. Q. And the pur-
pose of the Condemnation is to condemn the area set forth in that
jury award? A. Yes."

And upon cross-examination by counsel for Stubbs, Mr. Ross
testified: "Q. Now, are you aware, Mr. Ross, that the Township has
a 33 foot right of way over that road, over T-644? A. Yes. Q. Then
can you tell me why you're only using eight feet of the 33 foot
right of way; why you permit the road to be a bottleneck when
you own 33 feet of right of way? A. No. . . . Q. So you have per-
mitted this bottleneck to remain for at least three months and have

This case does not turn on whether or not the condemnation was for a public, as opposed to a private, purpose[4] but on whether or not the condemnation, made under the prevailing circumstances, was an arbitrary and bad-faith exercise of discretion such as to constitute an abuse of discretion.

The words "bad faith" have vital meaning when used as a limitation on the power of a governmental authority to condemn property. Bad faith is generally the opposite of good faith and, under the factual situation of this case, implies a tainted motive of retaliation. The courts have the responsibility to see that public officials have not acted in bad faith and that property be taken by eminent domain only to the extent reasonably required for the purpose for which the power is authorized. *Compare Redevelopment Authority of the City of Erie v. Owners,* 1 Pa. Commonwealth Ct. 378, 274 A.2d 244 (1971).

I conclude that (1) the condemnation of the exact land involved in the ejectment proceeding, (2) the existence of a 33-foot right-of-way of which 25 feet adjacent to the dirt road in question is not being utilized, (3) the absence of evidence indicating the element of necessity required by the empowering statute for exercising eminent domain, and (4) the motive of retaliation, borne out by the history of the litigation and being the triggering factor for the condemnation, were sufficient circumstances to constitute bad faith and overcome the presumption that the discretionary acts of the Supervisors were proper and not arbitrary or unreasonable.

---

not used the other 25 feet of roadway available for you to use, is that correct, up to this point? A Yes. Q. Now, can you give me a reason for not using your right of way? A. No."

[4] *See Borough of Big Run v. Shaw,* 16 Pa. Commonwealth Ct. 623, 330 A.2d 315 (1975).

Thus, I would hold on this record that the action of the Supervisors in condemning Stubbs' land constituted an abuse of discretion in its exercise of the power of eminent domain. Therefore, the taking in question was beyond the power conferred upon the Supervisors by law.