A Condemnation Proceeding In Rem by Hatfield Township for the Purpose of Acquiring Fee Simple Title to Property Described Herein in Hatfield Township for Park and Recreational Purposes. The Property of John S. Thomas and Johanne Thomas, his wife, Grace Building Company, Inc. and Bruce W. Keller. Hatfield Township, Appellant.

110

Argued October 6, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Andrew Emalone,* with him *George Willner,* and *Pearlstine, Salkin, Hardiman and Robinson,* for appellant.

*Alfred O. Breinig, Jr.,* for appellees.

OPINION BY JUDGE BLATT, January 7, 1977:

On September 23, 1974, Hatfield Township filed a Declaration of Taking for three contiguous units of land situated in the Township, indicating that the land was being taken for the purpose of extending an existing park and recreational facilities. The condemnees filed preliminary objections to the taking, which were sustained by the Court of Common Pleas of Montgomery County, and the court then dismissed the Declaration of Taking and revested title to the property in the condemnees.[1] The issue below was whether or not the Township properly exercised its power of eminent domain, and the lower court found that an improper exercise of such power had occurred. The Township has appealed.

The location of the subject property is indicated on the map here reproduced, and it appears as units 1, 2 and 3 at the lower left-hand corner. The present park property is shaded, and the additional property which is now owned by the Township in this area is marked "T."

---

[1] Condemnees are John S. Thomas, Johanne Thomas, Grace Building Co., Inc. and Bruce W. Keller.

112

T = owned by Township       = Park

2.

As can be seen, the township park now extends to Second Street, a so-called "paper" street, and the lower court found that the Grace Building Co. owned units numbered 6, 8, 83, 9 and 11. It also found that the Township had "leaped-frogged" over these intervening units of properties in order to condemn the subject property and that the property taken was con-

demned while it was the subject of a zoning appeal pending in this Court.[2]  Because the Township had previously condemned other property of the Grace Building Co. during the pendency of a zoning appeal (lot "A" on the above map), the court then held that:

It is manifestly clear that the intention of the township in this condemnation was to thwart the building plans of the condemnees.

. . . .

That the subject property was condemned while it was still the subject of a zoning appeal pending in the Commonwealth Court of Pennsylvania also indicates that the condemnation was done in bad faith.

Under the specific circumstances herein, Hatfield Township clearly acted in bad faith when it leap-frogged over intervening lots closer to the existing community park facilities and condemned the subject property by special ordinance while it was still the subject of a pending zoning appeal before the Commonwealth Court of Pennsylvania.

The issue presented here, therefore, is whether or not the lower court properly concluded that the Township had acted in bad faith by condemning the subject property.

The standard for the proper exercise of the power of eminent domain was stated in *Schenck v. Pittsburgh,* 364 Pa. 31, 36, 70 A.2d 612, 614 (1950) as follows:

It has been held in many cases that where the right of eminent domain is vested in a municipality, an administrative body, or even a private corporation, the question as to wheth-

_____

[2] In *Grace Building Co., Inc. v. Hatfield Township,* 16 Pa. Commonwealth Ct. 530, 329 A.2d 925 (1974), this Court granted a variance to the Grace Building Co.

er the circumstances justify the exercise of the power in a given instance is not a judicial one, at least in the absence of fraud or palpable bad faith.

*Accord, Crawford v. Redevelopment Authority,* 418 Pa. 549, 211 A.2d 866 (1965); *Lesher v. American Telephone and Telegraph Co.,* 1 Pa. Commonwealth Ct. 522, 276 A.2d 325 (1971). When a condemnee alleges that the condemnor has acted in bad faith, the condemnee has the very heavy burden of proving this allegation. *Nixon Hotel, Inc. v. Redevelopment Authority of Butler,* 11 Pa. Commonwealth Ct. 519, 315 A.2d 366 (1974). And, although it is true that the lower court's findings of fact will not be reversed on appeal when supported by substantial evidence, an appellate court may derive its own inferences and deductions from the facts and make its own conclusions of law. *Redevelopment Authority of Erie v. Owners,* 1 Pa. Commonwealth Ct. 378, 274 A.2d 244 (1971). Moreover, the actions of a condemnor, when viewed as an integrated whole, on appeal may be held to demonstrate bad faith, *Nixon Hotel, supra,* and

[b]ad faith is generally the opposite of good faith and [may imply] a tainted motive of interest. Bad faith becomes palpable when such motive is obvious or readily perceived. The courts have the responsibility to see that an authority has not acted in bad faith, and that property be taken by eminent domain only to the extent reasonably required for the purpose for which the power is exercised.

*Redevelopment Authority of Erie, supra,* 1 Pa. Commonwealth Ct. at 383, 274 A.2d at 247.

The lower court concluded as a matter of law that, based upon the actions of the condemnor, the condemnation here had been in bad faith, but we have carefully reviewed the record and note that Sydney

Brittin, Manager and Secretary of Hatfield Township, testified that the Township had acquired other tracts of land in the area for an expansion of the park as follows:

> (1) Unit 4 was purchased by the Township in September 1973 from the owner;

> (2) Units 5, 7 and 10 were purchased by the Township in 1973 "through tax claim deeds;" and

> (3) Unit B was purchased by the Township in August 1974 from the owner.

Mr. Brittin further testified that the Township had consistently been attempting to acquire property in the area for the expansion of the park without resorting to condemnation proceedings and that the Township did not now have the money to acquire units 6, 8, 83, 9 and 11. We have held previously that a municipality may have the right to acquire land for future expansion, *Pittsburgh School District Condemnation Case,* 430 Pa. 566, 244 A.2d 42 (1968), and that it may condemn ground for park purposes even though it cannot presently use the ground for that stated purpose, *Vecchione v. Township of Cheltenham,* 13 Pa. Commonwealth Ct. 260, 320 A.2d 853 (1974). Mr. Brittin's testimony, therefore, establishes facts which we believe would validate this condemnation.[3]

---

[3] We note that "certain principles are well settled and stem, in large measure, from judicial respect for the doctrine of separation of powers in government. First, it is to be presumed that municipal officers properly act for the public good. . . . Third, on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the *wisdom* of municipal actions and *judicial* discretion should not be substituted for *administrative* discretion." *Weber v. Philadelphia,* 437 Pa. 179, 183, 262 A.2d 297, 299 (1970) (citations omitted, emphasis in original); *Stubbs v. Township of Snyder,* 25 Pa. Commonwealth Ct. 613, 361 A.2d 464 (1976).

Furthermore, it must be remembered that, because the Township had condemned this property and another during the pendency of zoning appeals, the lower court thereby inferred bad faith on the part of the Township. Yet it is clear that the amount of just compensation payable to a condemnee for the taking of an empty lot, even though that lot might enjoy a variance, would be less than that amount payable after a residence has been constructed thereon, and that the Township's condemnation now, therefore, would save it money in the long run. As our Supreme Court has stated:

> A logical corollary of [the right to acquire land for future expansion] is that one of the condemnor's motives for presently acquiring land needed for future expansion may be to avoid excessive costs and waste of public funds if acquisition is delayed. Indeed, in some circumstances, a foresighted concern for avoiding excessive cost can properly be the major motive. (Citation omitted.)

*Pittsburgh School District Case, supra,* 430 Pa. at 573-74, 244 A.2d at 46.
We believe, therefore, that an inference may more readily be drawn from the facts here that the Township acted to conserve its limited economic resources than that it acted in bad faith as regards the condemnees.

Having considered all of the facts and circumstances of this case, we believe that the condemnees here have not met their heavy burden of proving palpable bad faith on the part of the condemnor. We hold, therefore, that the lower court reached an erroneous conclusion of law and that its decision must be reversed.

### ORDER

AND Now, this 7th day of January, 1977, the order of the Court of Common Pleas of Montgomery County dated July 9, 1975, is reversed, the preliminary objections of the condemnees are overruled, title is revested in the condemnor and the lower court is directed to enter an order appointing a Board of Viewers upon petition of either party in accordance with the provisions of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, 26 P.S. §1-101 et seq.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

I cannot conclude on this record that the court below erred as a matter of law in deciding that the condemnation by Hatfield Township under review here was taken arbitrarily or in bad faith. *Compare Stubbs v. Township of Snyder*, 25 Pa. Commonwealth Ct. 613, 361 A.2d 464 (1976).

My reading of the record convinces me that Judge HONEYMAN was absolutely correct when he wrote the following:

> Condemnor's explanation for why it leap-frogged over the closer intervening lots and condemned the subject tract was that it didn't have the money to acquire the intervening lots and that the subject tract fronted on Maple Avenue and at some future date might offer additional access to the park from Maple Avenue. This Court concluded that such contention was not genuine on the part of the township. It is manifestly clear that the intention of the township in this condemnation was to thwart the building plans of the condemnees.
>
> . . . .

That the subject property was condemned while it was still the subject of a zoning appeal pending in the Commonwealth Court of Pennsylvania also indicates that the condemnation was done in bad faith.

Therefore, I would affirm on the opinion of Judge HONEYMAN.