558 A.2d 605

In re Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 1021, Section 1B, a Limited Access Highway, in the City of Pittsburgh.

ESTATE OF Julia F. ROCHEZ, Deceased, By Edward GOSLIN et al.

Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1989.

Decided May 17, 1989.

Reargument Granted July 26, 1989.

60

Jeffrey L. Giltenboth, John L. Heaton, Asst. Counsel, Pittsburgh, for appellant.

Thomas J. Dempsey, Pittsburgh, for appellee.

Before DOYLE and COLINS, JJ., and KALISH, Senior Judge.

KALISH, Senior Judge.

The Pennsylvania Department of Transportation (DOT) filed a declaration of taking to acquire a fee simple estate in fifty percent of the property of the Estate of Julia F. Rochez (condemnee), for the construction of a limited access highway. The condemnee filed a number of preliminary objections, including, inter alia, that the taking was excessive. In an order dated August 6, 1985, the trial court held that section 3 of the Act of December 7, 1979, P.L. 478, (Act of 1979–100), 71 P.S. § 513(e), violated Article III, Section 3 of the Pennsylvania Constitution because the title of the

Act failed to give notice that its amendment to The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 513(e)(1), changed the law concerning condemnation for highway rights-of-way to permit such condemnation in fee simple. The condemnee then filed a motion for an amended order of court on the basis that in its order of August 6, 1985, the trial court failed to provide for the revesting of title to the condemned area.

Whereupon, the trial court vacated its prior order and in an order dated August 30, 1985, again held that Act 1979–100 was deficient and void, and ordered the property revested in the condemnee pursuant to section 406 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–406.[1] DOT appealed this order directly to the Pennsylvania Supreme Court.

Meanwhile, in a further clarification of its August 30, 1985 order, the trial court, on September 27, 1985, stated that its order was intended to be "dispositive of the case and did not require the court to address and dispose of the remaining preliminary objections which were therefore not ruled upon."

DOT then requested the Pennsylvania Supreme Court in addressing its appeal to vacate the September 27, 1985 order of the trial court on the ground that the trial court had no power to make an amendment while the appeal was pending in the Supreme Court. The Supreme Court disposed of the entire matter, ruling that Act 1979–100 *was* constitutional and remanded the case to the trial court to consider and decide all the remaining issues, including the question of the remaining preliminary objections. *In Re: Department of Transportation*, 511 Pa. 620, 515 A.2d 899 (1986).

Pursuant to the Supreme Court's mandate on remand, the trial court proceeded to consider and dispose of the remain-

1. Section 406 of the Eminent Domain Code, 26 P.S. § 1–406, provides that the court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title.

ing issues by taking testimony. The evidence indicated that while DOT needed only twenty feet into the condemnee's building for its roadway, it nevertheless condemned the entire building so that the area could be used as a staging area for the contractors and by so doing, would lessen the cost of construction.

The condemnee contends that it was not necessary to take its entire building, and that if twenty feet of the building was removed and a new wall erected, the building as "cured" would still be functionable. The condemnee contends that to that extent, DOT abused its discretion and the taking was excessive and void.

The trial court held that only twenty feet was necessary for public use, i.e., the construction of the highway, and therefore, the condemnation was excessive. It cited *Winger v. Aires*, 371 Pa. 242, 89 A.2d 521 (1952), and *Pittsburgh School District Condemnation*, 430 Pa. 566, 244 A.2d 42 (1968), for the proposition that excessive condemnation is invalid. On preliminary objections, the effect of such a holding would be to revest title in the excessive portion to the condemnee. Section 406 of the Eminent Domain Code, 26 P.S. § 1–406.

DOT contends that on remand the trial court cannot reconsider its preliminary objections. In addition, DOT contends that the taking of more than twenty feet of the building was not an abuse of discretion and therefore not excessive, and that it owns the land in fee simple.

■ Our scope of review in an appeal from a trial court in an eminent domain case, is limited to determining whether the court abused its discretion or committed an error of law. *Pidstawski v. South Whitehall Township*, 33 Pa. Commonwealth Ct. 162, 380 A.2d 1322 (1977).

■ In *Faranda Appeal*, 420 Pa. 295, 216 A.2d 769 (1966), and *Valley Forge Golf Club v. Upper Merion Township*, 422 Pa. 227, 221 A.2d 292 (1966), our Supreme Court held that preliminary objections are the sole and exclusive remedy available to a condemnee to challenge a condemna-

tion. A condemnation proceeding encompasses two distinct proceedings. One goes to whether there has been a taking, the other to damages. Thus, in the former proceeding, all preliminary objections must be heard promptly and at one time. However, here the trial court's decision that Act 1979–100 was constitutionally deficient put DOT out of court. It was a final order and it was appealable. It was the Supreme Court that ordered the trial court, on remand, to hear the remaining preliminary objections and to determine the issues.

Some of the early cases refer to the interest that the condemnor took as an "easement," while the later cases call it a "base" or "conditional" fee. However, as the court indicated in *Brookbank v. Benedum–Trees Oil Co.*, 389 Pa. 151, 131 A.2d 103 (1957), the important thing is not the name given to the estate or the interest acquired, but rather what are the rights acquired by reason of the taking. Thus, in *Brookbank*, where as a final step in the acquisition of a strip of land by eminent domain, the owner executed a deed which provided that the owner granted, bargained, sold, released and conveyed unto the railroad a strip of land, the court held that it was clear, even from the instrument itself, that the intent was to convey not an absolute fee, but rather a defeasible fee and that when the strip of land ceased to be used for the purpose acquired, the rights of the railroad ceased and the property reverted to the former owner.

█ In the instant case, it was known by the condemnor that the land to be acquired for the staging area was of a temporary nature to be used during the period of construction of the highway, and that it was not necessary for the permanent use of the highway. Accordingly, when DOT ceased to use .the staging area for highway construction purposes, its rights ceased. The interest was a defeasible fee in that title reverted to the former owner at the end of the construction project, or to the heirs and assigns.

■ Furthermore, once it is shown that the condemnation is for a public purpose and that the condemnor has the power to condemn, the other area of judicial review of the action of the condemnor involves administrative discretion. It has been held that the decisions of the condemnor concerning the amount or location of the land or the type of estate condemned are not subject to judicial review *unless such decision is fraudulent, arbitrary, or capricious.* There is a presumption that the acts of the condemnor are for the public good and the court will not substitute its discretion for that of the administrative body, absent such capriciousness or arbitrariness. *St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority,* 394 Pa. 194, 146 A.2d 724 (1958), *cert. denied* and *appeal dismissed,* 359 U.S. 435, 79 S.Ct. 940, 3 L.Ed.2d 931 (1959).

■ Section 2003(e) of The Administrative Code, 71 P.S. § 513(e), sets out the scope of the authority and power of DOT in acquiring land by condemnation, namely, "[t]o acquire ... land in fee simple or such lesser estate or interest as it shall determine, in the name of the Commonwealth, for all transportation purposes, including marking, rebuilding, relocating, widening, reconstructing, repairing, and maintaining State designated highways and *other transportation facilities including garages, storage sheds* or other buildings, as shall be required for transportation purposes." (Emphasis added.)

The record is clear that the condemned area involved in this matter was to be used as a storage area or construction facility for the contractors and builders to store their equipment during construction and that once this use has ended, there is no need for this property. In effect, the only interest that DOT needed was in the nature of a temporary easement. Knowing this, it was a clear abuse of discretion by DOT in taking a fee simple estate rather than such interest it shall determine was necessary for the temporary storage of the contractor's equipment. The taking of a fee simple was excessive. In any event, the land reverted to ownership by the condemnee.

■ Had the land been vacant when condemned, there is no question that the condemnor would be entitled to use the earth and to grade it for its purpose without making a separate payment therefor. *Hall v. Delaware, Lackawanna & Western Railroad Co.*, 270 Pa. 468, 113 A. 669 (1921). However, the building was razed, and DOT, by its conduct, interfered with the beneficial use of the condemnee's property. Therefore, just compensation *requires* that the condemnee be compensated.

Accordingly, this court agrees that there was a reverter of title to the condemnee. The order of the trial court is affirmed, and this matter is remanded for a determination of damages consistent with this opinion.

## ORDER

NOW, May 17, 1989, the order of the Court of Common Pleas of Allegheny County, No. GD–84–6940, is affirmed, and this matter is remanded to the Court of Common Pleas of Allegheny County for a determination of damages consistent with this opinion.

Jurisdiction relinquished.

DOYLE, J., concurs and dissents.

DOYLE, Judge, concurring and dissenting.

Respectfully, I dissent. Under Section 2003(e)(1) of The Administrative Code of 1929,[1] 71 P.S. § 513(e)(1), the Department of Transportation (Department) is empowered to:

acquire, by gift, purchase, condemnation or otherwise, land in fee simple or such lesser estate or interest as *it* shall determine, in the name of the Commonwealth, for all transportation purposes, including marking, rebuilding, relocating, widening, reconstructing, repairing and maintaining State designated highways and other transportation facilities ... (emphasis added).

**1.** Act of April 9, 1929, P.L. 177, *as amended.*

Two things are readily apparent from this language. First, the discretion as to the nature of the interest to be condemned is delegated to the Department, not to this Court. Second, a condemnation under Section 2003(e)(1) is permissible provided it is for "all transportation purposes."

We have previously had occasion to consider the phrase "all transportation purposes." In *Miller v. Department of Transportation*, 91 Pa. Commonwealth Ct. 622, 498 A.2d 1370 (1985), we broadly construed the above phrase, in dictum, to include transportation-related activities. In that case, the operation of a parking garage, functioning as an integral part of a highway project, was found to be a transportation-related activity within the meaning of Section 2003(e)(1). Further, we opined in *Corcoran Appeal*, 113 Pa. Commonwealth Ct. 402, 537 A.2d 384 (1988), that "all transportation purposes" means that "if the purpose of the condemnation is in furtherance of DOT's responsibility to provide a fast, safe and efficient transportation system in the Commonwealth with due regard to public health and safety, then DOT has the authority and the duty to proceed with that condemnation if it is incidental to the reconstruction, repair or maintenance of a State designated highway." *Id.*, 113 Pa.Commonwealth Ct. at 405, 537 A.2d at 385 (footnote omitted). Thus, in *Corcoran*, we permitted the Department to condemn portions of property for the purpose of constructing curbs around an intersection in order to make the roadway more safe.

Since we recognized in *Corcoran* that the Department may act under its Section 2003(e)(1) powers where it is pursuing the goal of an efficient transportation system, it is my view that the Department's position, that the taking of a fee is justified on a cost effective basis, is a legally valid one.[2] Moreover, considering that our state supreme court has held that the economic soundness of a taking is a

2. The Department also contends that the area in question was to be used for storage facilities during the course of the construction project. Since the Department never asserted initially that this was a basis for condemning the entire fee, I believe it is improper to consider that argument here on appeal.

proper factor to be considered when eminent domain powers are exercised, *see Pittsburgh School District Condemnation Case,* 430 Pa. 566, 244 A.2d 42 (1968),[3] I am unwilling to conclude, as does the majority, that the Department, by asserting cost effectiveness as a justification for taking the entire fee, has not demonstrated compliance with Section 2003(e)(1) or that it has abused its discretion.

The Department also argues that a holding such as that reached by the majority will create great uncertainty. It indicates in its brief, "[t]o uphold the action of the trial court would be essentially to force the Department of Transportation to sever and rebuild any number of properties that are involved in highway condemnations. The problems this would create would be greatly compounded by the existence of a tenant, as was the situation here. Would a severed building interfere with, or perhaps even cause cancellation of a lease? If so, what would the Department's liability be for such cancellation? Here, the tenant had special wiring, piping and equipment. A partial taking of a building would have had virtually the same effect on the tenant as a total taking." Department's brief, p. 21. I agree with this reasoning.

What occurred here was a condemnation of part, not all, of the condemnee's property (approximately 41%), but that portion taken included the condemnee's entire building. This building was a one and two story structure, approximately 105' by 105', and was situated on the north end of the condemnee's property which abuts the new highway. The major portion of the property south of the building was not occupied by any structure and was used for parking. The building was totally occupied by a technical school which leased the entire property, including the parking lot, from the condemnee.

After DOT condemned that portion of the property that included the entire building, it totally razed the building and, of course, paid the condemnee just compensation for

---

**3.** *See also Hatfield Township Appeal,* 28 Pa. Commonwealth Ct. 109, 367 A.2d 747 (1977) (quoting *Pittsburgh School District* ).

taking the entire fee interest. The condemnee's argument is that DOT needed, permanently, only 20 feet of the building for the actual highway and the Commonwealth's condemnation was excessive. The trial court agreed. This would have the effect of returning all the excess property taken, other than the 20 feet, to the condemnee. But the building that once was on that property is now gone, having been completely razed by DOT. Damages now would include the cost of reconstructing the building. The majority disagrees with the condemnee's theory and holds that DOT had a right to condemn the entire building, but, "when DOT ceased to use the staging area for highway construction purposes, its rights ceased. The interest was a defeasible fee in that title reverted to the former owner at the end of the construction project, or to the heirs and assigns." At p. 608. The majority remands for a computation of damages. But what will be the measure of damages? Since DOT did not abuse its discretion and the condemnation was not excessive, DOT properly razed the building to use the property as a contractor's staging area. Must DOT now respond in damages for activity that was lawful and proper when it was committed?

On the other hand, DOT's position would not result in an award for additional damages, but *may* result in the condemnee's reacquisition of the property. This is because, as condemnee informs us in the brief, it is DOT's intention, *if* it no longer needs the property, to "sell off the remaining portion of the property [which was taken by DOT] in accordance with the provisions of [Section 2003(e)(7)(ii), 71 P.S. § 513(e)(7)(ii) ]. Condemnee's brief, p. 17. That Section states:

> "[T]he department may sell at public sale any land acquired by the department if the secretary determines that the land is not needed for present or future transportation purposes:
>
> .    .    .    .    .

(ii) Unimproved land shall first be offered to the person from whom it was acquired at its acquisition price, less costs, expenses and reasonable attorneys' fees incurred by the person as a result of the acquisition of the land by the department, if the person still retains title to land abutting the land to be sold. If the land abutting the land to be sold has been conveyed to another person, the land to be sold shall first be offered to that person at its fair market value as determined by the department.[4]

Finally, *Brookbank v. Benedum–Trees Oil Co.*, 389 Pa. 151, 131 A.2d 103 (1957), relied upon by the majority, is completely inapposite because the Supreme Court was there interpreting an *agreement* between a railroad company and the owners of a farm over which tracks had been laid. By 1957 the railroad had not run a train over the tracks in fourteen years and the litigation involved the mineral rights (a gas well drilled on the former railroad bed crossing) underlying the railroad's right-of-way. Further, at the time *Brookbank* was decided, the Commonwealth could only condemn an easement interest for highway purposes, not a fee simple interest. *See* Section 3 of the Act of December 7, 1979 P.L. 478, *amending* Section 2003 of the Administrative Code of 1929, and permitting the Commonwealth to condemn a fee interest.

I, therefore, concur with the majority's view that the condemnation was proper; I dissent from the majority's further view that what was acquired was a "defeasible fee"; DOT condemned and acquired a fee simple interest.

4. This language was added to Section 2003 by Section 3 of the Act of December 7, 1979, P.L. 478.