DISSENTING OPINION BY
Judge LEAVITT.
I respectfully dissent. Unlike the majority, I would affirm the order of the trial court and hold that PennDOT’s declaration of taking was untimely filed under Section 302(e) of the Eminent Domain Code, 26 Pa.C.S. § 302(e).[1] This result is compelled by this Court’s decision in In re Redevelopment Authority of City of Allentown (Ribbon Works), 31 A.3d 321 (Pa.Cmwlth.2011), which is not factually distinguishable and which the Court should not overrule, in part or in whole.
To begin, I disagree with the majority’s conclusion that Ribbon Works is factually distinguishable. In Ribbon Works, the redevelopment authority issued a “reauthori-zation” more than one year after its authorization to condemn and after it filed its declaration of taking. Ribbon Works overruled this so-called “reauthorization” and held that
[tjhere is nothing [in Section 302(e) ] giving [the Redevelopment Authority] authority to extend the one year time period by adopting another resolution “continuing” the authority to condemn.
*637 Ribbon Works, 31 A.3d at 323. The Ribbon Works ban on “adopting another resolution” to extend the one-year deadline for filing a declaration of taking does not provide an exception where the second resolution is done before expiration of the one-year time period. Simply, Ribbon Works established that the Secretary’s “reauthor-ization” constituted an invalid attempt to skirt the directive in Section 302(e) that the “condemnor shall file within one year of the action authorizing the declaration of taking a declaration of taking....” 26 Pa. C.S. § 302(e).
Likewise, I disagree with the majority’s conclusion that the mandate in Section 302(e) is directory and not mandatory. “[T]he difference between a mandatory and directory provision is the consequence for noncompliance: a failure to strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved.” JPay, Inc. v. Department of Corrections, 89 A.3d 756, 763 (Pa.Cmwlth.2014). In other words, a directory statute is one that does not require strict compliance. The Eminent Domain Code, however, is strictly construed. In re Condemnation by the School District of Pittsburgh, 430 Pa. 566, 244 A.2d 42, 44 (1968); In re Condemnation of 110 Washington St., Borough of Conshohocken, 767 A.2d 1154, 1159 (Pa.Cmwlth.2001); In re Condemnation by Township of Heidelberg (Speicher Condemnation Appeal), 58 Pa. Cmwlth. 321, 428 A.2d 282, 285 (1981). A strict construction of Section 302(e) requires that the one-year deadline be construed as a mandatory provision.
Finally, I disagree with the majority’s adoption of PennDOT’s public policy argument that Section 302(e) erects insurmountable administrative hurdles to its projects.[2] Section 302(e) applies to every condemnor, whether a private utility or a government agency, in the exercise of the power of eminent domain. The countervailing public policy argument is more persuasive, i.e., that condemnors should not be allowed to place private property owners in eminent domain limbo by repeatedly reauthorizing plans of acquisition.
Eminent domain limbo is anathema to the real estate market. As one commentator has astutely explained:
[Bjefore ponderous bureaucratic machinery can translate public project planning into land acquisition, time passes. During that time[,] notice that a taking is imminent becomes widespread, which in turn promotes a wholesale departure of tenants, reluctance on the part of owners in the affected area to invest in improvements and maintenance, and distortion of the real estate market. Obviously, few people are willing to buy or lease property which will be taken from them in the foreseeable future. Such reluctance cuts across the potential market. At one extreme, families are apprehensive about making their home in dwellings from which they will be displaced at a time not of their own choosing, perhaps requiring a mid-term school transfer for their children. At the other end of the potential market, businessmen are even more reluctant to move into an area slated for a taking, and rightly so. What businessman in his right mind would buy or lease under such circumstances? Why should he remodel, install trade fixtures, buy stock-in-trade, and develop goodwill for his business, only to have it all confiscated when the threatened condemnation comes?
*638 Market activity within the affected area decreases, and such sales of real property as do occur are disproportionately composed of distress sales (i.e., sales compelled by death, divorce, job transfers, economic reverses, and other factors tending to depress sales prices). The buyers of such properties understandably pay less than actual market value. Since the affected area is “on borrowed time,” economic activity within it — such as it is — tends to become dominated by persons who .are able and willing to devote real property to short-term uses. Often,,, there are not enough such people to utilize existing improvements, 'With the result that vacancies increase, thereby encouraging vandalism and. causing business to decline. These events in turn provide the remaining ■inhabitants of the area with additional incentive to relocate. In some instances such events combine to form a, vicious cycle leading ultimately to abandonment of entire city blocks.
All of these problems become exacerbated with the passage of time.
Gideon Kanner, Condemnation Blight: Just How Just is Just Compensation, C730 ALI-ABA 219, 223-25 (ALI 1992) (footnotes, omitted). The General Assembly established a strict one-yéar deadline in Section 302(e) of the Eminent Domain Code between the authorization for a declaration of taking and its actual filing, and it did so for sound policy reasons.
For these reasons,. I. would hold that Ribbon Works is controlling and affirm the decision of the trial court.

. Section 302(e) states: "The condemnor shall file within one year of the action authorizing the declaration of taking a declaration of taking covering all properties included in the authorization not otherwise acquired by the condemnor within this time.” 26 Pa.C.S. § 302(e).

. If PennDOT believes that its projects require a different provision in the Eminent Domain Code, this should be addressed to the legislature.