## PENNSYLVANIA DEPARTMENT OF TRANSPORTATION

v.

**MONTGOMERY TOWNSHIP, Solomon Sultanik, Edward C. Latta, Volga Carlson, Shirley McHose, John W. Rex, J. Walter Rex, Jean M. Rex, Jules Pearlstine.**

### Appeal of MONTGOMERY TOWNSHIP, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1994.
Decided March 9, 1995.

---

Emory W. Buck, for appellant.

William J. Cressler, Asst. Chief Counsel, for appellee, Dept. of Transp.

Stephen G. Yusem, for appellees Sultanik and Kasorex.

Before McGINLEY and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Montgomery Township (Township) appeals from an order of the Court of Common Pleas of Montgomery County granting preliminary objections to a declaration of taking filed by the Pennsylvania Department of Transportation (DOT) pursuant to the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101–1–903. We affirm.

The declaration of taking involved condemnation of land in which Kasorex, a partnership, held a possibility of reverter by virtue of a stipulation and deed of dedication, dated August 29, 1986, which deeded the land to Montgomery Township, with Kasorex retaining a reversionary interest. The land was a possible site for construction of a new portion of Route 202. According to the deed, the property *would not revert back* to Kasorex if "formal definitive action such as condemnation, beginning of road construction, appropriation of funds for acquisition and construction of the road or any other formal binding action that will obligate the Commonwealth, County or Township for the completion of the road as it goes through the corridor set forth in the afore described premises in exhibit 'A' " had occurred within an eight year period commencing on July 10, 1984.

On January 28, 1992, approximately six months before the property would have reverted to Kasorex, DOT filed a declaration of taking condemning this property. Pursuant to the Eminent Domain Code, Kasorex filed preliminary objections to the condemnation,

claiming that the condemnation was not for a valid public purpose and was arbitrary, capricious and undertaken in bad faith. The trial court granted Kasorex's preliminary objections without taking additional evidence, determining that DOT had abused its discretion by condemning the property without having first determined whether that alignment would be used for the improvements to Route 202. The Township appealed to this court.[1]

■ On appeal,[2] the Township argues that the trial court erred by granting the preliminary objections without first taking evidence on issues of fact raised by the preliminary objections and the answer thereto.[3] In addition, both the Township and DOT, which also filed a brief, argue that the trial court erred in determining that DOT abused its discretion in condemning the property.

The Eminent Domain Code provides in pertinent part:

(a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

. . . .

(e) The court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title. . . . *If an issue of fact is raised, the court shall take evidence by depositions or otherwise.* The court may allow amendment or direct the filing of a more specific declaration of taking.

Section 406 of the Eminent Domain Code, 26 P.S. § 1–406 (emphasis added).

■ According to the Eminent Domain Code, the court must take evidence if an issue of fact is raised. However, "[w]here . . . the issues before the court are purely legal, the court may rule on the preliminary objection without a hearing." *Miller v. Department of Transportation,* 91 Pa.Commonwealth Ct. 622, 498 A.2d 1370 (1985). Here, because DOT and Kasorex agreed that DOT had not definitely chosen to build a new portion of Route 202 through the Kasorex property corridor, the trial court determined that no material facts were in dispute and concluded, as a matter of law, that the condemnation was invalid.

To determine whether the trial court was correct, we address the question which underlies the trial court's conclusion of law: whether DOT can exercise the power of eminent domain to condemn land for a highway improvement when the exercise of the power of eminent domain will extinguish the property interest of Kasorex to whom the property would have reverted in approximately six months and the need for the land has not been finally determined.

In describing the power of eminent domain, our Supreme Court has said:

property and of the extent of the taking is limited to determining whether the condemnor is guilty of fraud, bad faith, or has committed an abuse of discretion. *Id.*

1. After the Township appealed, Kasorex filed a Motion to Dismiss, arguing that the Township did not have standing to appeal. Judge Smith denied this motion on the basis that the Township was aggrieved by the trial court's order.

2. Our scope of review on appeal from the grant of preliminary objections to a declaration of taking filed pursuant to the Eminent Domain Code is limited to determining whether the trial court abused its discretion, committed an error of law, or whether the findings and conclusions are supported by sufficient evidence. *In re Waite,* 163 Pa.Commonwealth Ct. 283, 641 A.2d 25 (1994). The trial court's review of a decision to condemn

3. The Township also argues that the trial court erred by failing to conclude that Kasorex's right of reverter had been extinguished by the declaration of taking and the itemization of the Route 202 project in an approved capital budget. The trial court was addressing the preliminary objections to a declaration of taking, not whether Kasorex's reversionary interests had been extinguished pursuant to the deed.

The right of the Commonwealth to take private property without the owner's assent on compensation made, or authorize it to be taken, exists in her sovereign right of eminent domain, and can never be lawfully exercised but for a public purpose—supposed and intended to benefit the public either mediately or immediately. The power arises out of the natural principle which teaches that private convenience must yield to public wants. This public interest must lie at the basis of the exercise, or it would be confiscation and usurpation to exercise it.

*Winger v. Aires,* 371 Pa. 242, 247, 89 A.2d 521, 523 (1952), quoting *Lance's Appeal,* 55 Pa. 16, 25 (1867). As limited by the state and federal constitutions, governments may exercise the power of eminent domain only for a public purpose and upon payment of just compensation to the property owner. U.S. CONST. amend. V, PA. CONST. art. 1, § 10.[4]

■ Section 2003(e)(1) of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 513(e)(1), grants DOT the right to condemn property "in the name of the Commonwealth, for all transportation purposes." Certainly, DOT may acquire land for relocation of Route 202. Furthermore, DOT may acquire land prior to the time that it is actually needed. "[A] foresighted concern for avoiding waste of public funds can properly be the major motive for the state's exercise of its right to take by eminent domain." *In re Marivitz,* 161 Pa.Commonwealth Ct. 247, 636 A.2d 1241 (1994); *see also Pittsburgh School District Condemnation Case,* 430 Pa. 566, 244 A.2d 42 (1968); *Octorara Area School District Appeal,* 124 Pa.Commonwealth Ct. 472, 556 A.2d 527 (1989). However, DOT's condemnation powers are not unlimited. DOT may not condemn "a greater amount of property than is reasonably required for the contem-

plated purpose," and land acquired to meet future needs must "be necessary in good faith for future use within a reasonable time." *In re Waite,* 163 Pa.Commonwealth Ct. 283, 290, 641 A.2d 25, 28–29 (1994); *Octorara Area School District.*

The Township and DOT assert that it was necessary to condemn this property before reversion to Kasorex in order to avoid waste of public funds. This argument is based on DOT's assumption that Kasorex's interest has no value prior to reversion, so that no compensation will be owed to Kasorex if this condemnation is valid. (R.R. at 5a.) This assumption goes directly to the heart of this case.

With regard to the value of a reversionary interest, comment a to section 53 of the Restatement of Property states:

> The condemning party is generally privileged to join in a single proceeding all persons having estates or interests in the affected land. . . . [In general, the procedure] is to fix a lump sum value for the estate in fee simple absolute and then to take up the distribution of this sum among the persons having interests in the affected land.

RESTATEMENT OF PROPERTY § 53 cmt. a (1936). Moreover, when the reversion is imminent, comment c states:

> [T]he amount of damages is ascertained as though the estate were a possessory estate in fee simple absolute, and the damages, so ascertained, are divided between the owner of the estate in fee simple defeasible and the owner of the future interest in such shares as fairly represent the proportionate value of the present defeasible possessory estate and of the future interest.

RESTATEMENT OF PROPERTY § 53 cmt. c (1936). Our Supreme Court quoted comment c with favor in *Chew v. Common-*

---

4. The Fifth Amendment to the federal constitution provides in pertinent part: "[N]or shall private property be taken for public use, without just compensation." The comparable provision of the Pennsylvania Constitution, article I, section 10, states: "[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

Although the U.S. and Pennsylvania constitutions say that the power of eminent domain may be exercised to acquire private property for "public use," the concept of public use has expanded over the years so that it is now considered to be coterminous with "public purpose." *See Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

*wealth,* 400 Pa. 307, 161 A.2d 621 (1960). In *Chew,* a railroad indicated its intent to abandon rail service, which act would have caused the property to revert to successors of the original landowners. However, approximately four months before the property would have reverted, the Commonwealth condemned the property for highway purposes. Holding that the Commonwealth could not deprive the holders of the reversionary interest of the compensation to which they were entitled, the Court remanded for ascertainment of the proper distribution of damages. Clearly, then, in Pennsylvania, an *imminent* reversionary interest does have value.

Here, approximately seven and one half years had passed since execution of the deed creating Kasorex's reversionary interest, and the property was due to revert to Kasorex in about six months. Whether it acquires the property before or after the reversion, DOT is required to pay Kasorex just compensation, calculation of which is based upon the value of the fee simple absolute interest.[5] Thus, DOT would not avoid wasting public funds by acquiring the property before its reversion to Kasorex and necessity for the taking cannot be based on that argument.

■ DOT also argues that, in order to prevent imminent development of property which may be chosen as the route for a road, it may acquire the property before it has completed all studies necessary to finalize the location of the road. This is called a protective acquisition and is recognized in the federal regulations. Although not controlling in this case where there is no evidence that federal funds were to be used in the acquisition, portions of the federal regulations governing hardship acquisition and protective buying procedures are helpful to our analysis. 23 C.F.R. § 712.204(d). The regulation states, in pertinent part:

(1) *In extraordinary cases or emergency situations* the State highway department may request and the Federal Highway Administrator may approve Federal participation in the acquisition of a particular parcel or a limited number of particular parcels within the limits of a proposed highway corridor prior to completion of the processing of the final environmental impact statement or adoption of the negative declaration, but only after (i) the State highway department has given official notice to the public that it has selected a particular location to be the preferred or recommended alignment for a proposed highway, or (ii) a public hearing has been held or an opportunity for such a hearing has been afforded. *Proper documentation shall be submitted to show that the acquisition is in the public interest and is necessary to:*

(A) *Alleviate particular hardship to a property owner, on his request, in contrast to others because of an inability to sell his property;*[6]

(B) *Prevent imminent development and increased costs of a parcel which would tend to limit the choice of highway alternatives.*

23 C.F.R. § 712.204(d) (emphasis added).

We find the federal regulations meaningful to our analysis here. If the location of a proposed road or road improvement has not been finally decided because a required study such as an environmental impact study has not been completed, protective acquisition for highway purposes may be permitted but only in "extraordinary cases or emergency situations" when the condemnor has already selected that location as the "preferred or recommended alignment for a proposed highway," and the acquisition is necessary to "[p]revent imminent development and increased costs of a parcel which would tend to

---

5. We note that the Township agreed to enter into a post-condemnation settlement with DOT and to settle and discontinue the action for compensation for $1.00. (R.R. at 33a.) This cannot be taken as an indication of the value of combined interests of the Township and of Kasorex.

6. A Pennsylvania example of a hardship acquisition is found in *Conroy–Prugh Glass Co. v. Department of Transportation,* 456 Pa. 384, 321

A.2d 598 (1974), where our Supreme Court denied DOT's preliminary objections to Conroy-Prugh's de facto taking action because DOT's failure to acquire the property would work a hardship on the landowner where tenants had fled in anticipation of condemnation, rental income no longer covered costs and the property had been listed for treasurer's sale for non-payment of taxes.

limit the choice of highway alternatives." 23 C.F.R. § 712.204. Here, DOT fails to allege that development is imminent or that this is the preferred or recommended alignment rather than merely one alternative solution to Route 202 congestion.

DOT, citing *Gaughen v. Department of Transportation,* 123 Pa.Commonwealth Ct. 550, 554 A.2d 1008 (1989), a de facto taking case, argues that protective acquisition is a corollary to de facto takings based on precondemnation activities and that *Gaughen* supports its condemnation of the Kasorex parcel.[7] However, this argument is inapplicable here because DOT has not pled any facts which might have supported a protective acquisition of the Kasorex property.

Thus, we agree with the trial court that, as a matter of law, the attempted condemnation was invalid. Contrary to the requirements set forth in *In re Waite* and *Octorara Area School District,* DOT has not shown that the early condemnation was necessary in good faith for a future transportation purpose within a reasonable period of time.

Accordingly, we affirm.

### ORDER

AND NOW, this 9th day of March, 1995, the order of the Court of Common Pleas of Montgomery County, dated November 4, 1993, is affirmed.

DELLA PORTA, Senior Judge, dissenting.

I dissent, respectfully. The majority erred when it decided to make "the heart of this case" an issue which is not relevant to this proceeding.

---

7. *Gaughen* involved a situation where DOT had plans dating back to 1964 to build a connecting route between I–81 and U.S. Route 11, which had been stalled for lack of funding. Although a potential corridor had been shown on the Township's comprehensive plan and marked on its zoning map, DOT did not decide on the actual alignment for the connector until the summer of 1987. In 1986, while Gaughen was actively pursuing plans to develop a planned residential development for senior citizens, DOT asked the Township to delay action on subdivision applications within the potential road corridor until

What we have before us is an appeal by Montgomery Township from the trial court's granting of Preliminary Objections to a declaration of taking by the Pennsylvania Department of Transportation (DOT) under the Eminent Domain Code.[1] The only issue that can be raised by Preliminary Objections, in addition to the propriety of the procedures followed by DOT, is whether DOT has the power or right to condemn the property in question. The Eminent Domain Code provides in pertinent parts:

(a) Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property unless the same has been previously adjudicated; (2) the sufficiency of the security; (3) any other procedure followed by the condemnor; or (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

. . . .

(e) The court shall determine promptly all preliminary objections and make such preliminary and final orders and decrees as justice shall require, including the revesting of title. . . . *If an issue of fact is raised, the court shall take evidence by depositions or otherwise.* The court may allow amendment or direct the filing of a more specific declaration of taking.

(Section 406 of the Eminent Domain Code, 26 P.S. § 1–406) (emphasis added).

DOT had obtained funds to institute protective buying within the corridor. DOT also took other steps which interfered with Gaughen's financing for his project. For our purposes, the importance of *Gaughen* is that protective buying is mentioned in a situation where the road alignment had not been finally selected and development of property within the proposed corridor was imminent.

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903.

As correctly quoted by the Majority, our Supreme Court, in describing this power has said:

> The right of the Commonwealth to take private property without the owner's assent on compensation made, or authorize it to be taken, exists in her sovereign right of eminent domain, and can never be lawfully exercised but for a public purpose—supposed and intended to benefit the public either mediately or immediately. The power arises out of the natural principle which teaches that private convenience must yield to public wants.

The Court also stated that the School Board unquestionably "has the power by this statute and under the Constitution of the Commonwealth itself, to take private property for school building purposes." The Court went on to conclude that what can be challenged is the "extent of that power," and remanded to the trial court for further proceeding to determine more accurately the amount of land condemned "necessary to meet the needs of the School District." [2]

Clearly, in the case *sub judice*, DOT has the power to condemn land for the public purpose of highway construction.[3] Furthermore, that purpose does not have to be imminent, it can be "mediately," meaning, intermediately as opposed to immediately. The important thing is that the condemning authority use this power within the authority of the law and not abuse its discretion.

Our Court in *In re Marivitz* 161 Pa.Commonwealth Ct. 247, 253, 636 A.2d 1241, 1244 (1994), recently held that condemnation of land for economic reasons and not for transportation purpose was perfectly valid. Furthermore, this Court stated, "a foresighted concern for avoiding waste of public funds can properly be the major motive for the exercise of the state's exercise of its right to take by eminent domain." In other words, it is a proper exercise of its power for DOT to "avoid windfall profits to those individuals...." (*Id.*)

The majority places a great deal of reliance on *Octorara Area School District Appeal*, 124 Pa.Commonwealth Ct. 472, 556 A.2d 527 (1989) which is well distinguishable on two grounds: (1) the trial court had considerable evidence before it from extensive hearings held by the School Board; (2) the decision to condemn an entire working farm for school buildings projected to be needed over the next 5 to 12 years, where the probable need is based on assumption and possibilities of housing developments which were challenged by contrary evidence, was found to be beyond the eminent domain power vested in the Board by the Public School Code. Even so, in arriving at this conclusion, this Court observed: "The purchase of land for such projected needs to avoid higher costs in the future and to be sure there is sufficient land *is proper and commendable.*" *Id.* at 481, 556 A.2d at 531 (emphasis added).

The majority's reliance on *Appeal of Waite*, 163 Pa.Commonwealth Ct. 283, 641 A.2d 25, 28–29 (1994) is even more misplaced. Firstly, the trial court conducted a full hearing and even conducted a view of the site before ruling on the preliminary objections. Secondly, our Court affirmed the trial court's dismissal of the preliminary objections, by stating: "It has long been recognized that a condemnor may acquire land for future expansion, even if it cannot presently use the land for the purpose stated in the declaration of taking, so long as the land will be necessary in good faith for future use within a reasonable time." This Court then went on, quoting from *Pittsburgh School Dist. Condemnation Case*, 430 Pa. 566, 573–74, 244 A.2d 42, 46 (1968): "A logical corollary of this right is that one of the condemnor's motives for presently acquiring land needed for future expansion may be to avoid excessive costs and waste of public funds if acquisition is delayed. Indeed, in some circumstances, a foresighted concern for avoiding excessive cost can properly be the major motive."

After reading both of these cases, my conclusion is that they are not authority for affirming the trial court's granting of the

---

2. *Winger v. Aires*, 371 Pa. 242, 246–47, 89 A.2d 521, 522–23 (1952).

3. Section 2003(e)(1) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 513(e)(1).

preliminary objections in the case *sub judice,* rather, they indeed support the opposite conclusion and, hence, this dissent.

Here Kasorex, who received all the benefits of the contract with Montgomery Township which terminated long standing litigation between them and which contained the reversionary interest to Kasorex in the event that the land corridor in question would be abandoned as a proposed relocation of Route 202, now objects to the very condition to which he agreed in the contract. That condition, of course, is the right of the Commonwealth or Township to exercise the power of condemnation of that land for the stated purpose. So, neither Kasorex, nor the public in general was surprised when the declaration of condemnation took place because the relocation of Route 202 to relieve the extremely congested condition there was an unquestionable matter of public knowledge. Furthermore, not only the condemnation itself had taken place, but an important step to carry out the project had also occurred— approval of. the Township's capital budget containing this project.

The majority's conclusion, that DOT has not shown that this condemnation was necessary in good faith for future transportation purpose within a reasonable time, is incongruous when DOT has not been given an evidentiary opportunity to do so.

On the basis of this entire record and the applicable law, I believe that this Court should simply reverse. At the very least, this Court should remand to the trial court to take evidence on the issues which may be raised by preliminary objections, as above set forth.

For the above reasons, I am compelled to dissent.