IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation of Easement :
and Right of Way Across lands of :
Curtis R. Lauchle and Terri L. :
Lauchle, husband and wife, by :
UGI Penn Natural Gas, Inc. For :
Public Purposes :
 :
Appeal of:  Curtis R. and Terri L. : No. 2215 C.D. 2014
Lauchle : Argued:  September 14, 2015

BEFORE: HONORABLE BERNARD L. McGINLEY, Judge
   HONORABLE ROBERT SIMPSON, Judge
   HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY    FILED:  January 5, 2016


   Appellants, Curtis R. and Terri L. Lauchle, (Lauchles) own 357 acres of land in Lycoming County, Pennsylvania.  Petition for Approval and Order for Filing Condemnation Bond filed July 15, 2014 (Condemnation Petition-Pipeline Easement) at 1-2, Notes of Testimony, October 17, 2014 (N.T.) at 11, 28-29; Reproduced Record (R.R.) at 19a-20a, 61a, 78a-79a.

   In July 2014, UGI Penn Natural Gas, Inc. (UGI), by way of the Condemnation Petition-Pipeline Easement, sought to condemn the Lauchles' land for a natural gas pipeline (Pipeline Easement)[1] pursuant to Section 1511 of the

---

[1] The condemnation for the Pipeline Easement is docketed in the Prothonotary's Office of Lycoming County at 14-01790.  See Lycoming County Prothonotary Complete Case History, Condemnation Petition-Pipeline Easement at 2, R.R. at 2a, 19a-22a.

Pennsylvania Business Corporation Law of 1988, 15 Pa.C.S. §1511(g). Condemnation Petition-Pipeline Easement, R. R. at 19-22a.

In August, 2014, by way of a Petition for Approval and Order for Filing Condemnation Bond, filed August 27, 2014 (Condemnation Petition-TCE), UGI also sought to obtain a temporary construction easement (TCE)[2] for purposes related to the Pipeline Easement. Condemnation Petition-TCE, R.R. at 29a-32a.

## PROCEDURAL HISTORY

### The Pipeline Easement

In regards to the Pipeline Easement, and in follow-up to the Condemnation Petition-Pipeline Easement, on August 19, 2014, UGI moved for approval by the Lycoming County Court of Common Pleas (common pleas court) of its Condemnation Petition-Pipeline Easement and attached a bond in the amount of $25,000 (Motion-Pipeline Easement)[3]. Motion-Pipeline Easement, R.R. at 13a-22a. By Order dated August 26, 2014 (August 26, 2014 Order), the common pleas court granted the Condemnation Petition-Pipeline Easement and approved the bond pertaining to the Pipeline Easement. August 26, 2014 Order, R.R. at 23a.

Subsequently, on August 29, 2014, the Lauchles filed an Answer to Petition/Action in Equity in response to UGI's filings in the Pipeline Easement matter (Answer/Equity Action-Pipeline Easement). Answer/Equity Action-Pipeline Easement, R.R. at 24a-27a. In their Answer/Equity Action-Pipeline

---

[2] The TCE is docketed in the Prothonotary's Office of Lycoming County at 14-02219. See Lycoming County Prothonotary Complete Case History, Condemnation Petition-TCE at 2, R.R. at 4a, 29a-32a.

[3] As of the date that UGI filed its Motion-Pipeline Easement, no attorney had entered an appearance for the Lauchles.

Easement, the Lauchles raised the following challenges to the Condemnation Petition-Pipeline Easement: (1) that this was a taking for the benefit of a private enterprise rather than for a public purpose; (2) that the proposed taking was for more property than necessary; (3) that UGI's attempt to enlarge its easement for the pipeline was in excess of the current need and was unjustified; and (4) that the bond amount was inadequate. Answer/Equity Action-Pipeline Easement at 2-3, R.R. at 25a-26a.

**The TCE**

In regards to the TCE, and in follow-up to the Condemnation Petition-TCE, on September 9, 2014, the Lauchles filed an Answer to the Petition/Action in Equity in response to UGI's filings in the TCE matter (Answer/Equity Action-TCE). Answer/Equity Action-TCE, R.R. 47a-50a. In this Answer/Equity Action-TCE, the Lauchles raised the following challenges to the Condemnation Petition-TCE: (1) that the bond amount was inadequate; (2) that factual issues were raised which suggested that an evidentiary hearing was necessary after discovery; and (3) that this TCE was a taking for a private enterprise rather than a public purpose. Answer/Equity Action-TCE, R. R. at 47a-50a.

Thereafter, on October 1, 2014, UGI moved for approval by the common pleas court of its Condemnation Petition-TCE (Motion-TCE).[4]

---

[4] The Motion-TCE was not incorporated as part of the Reproduced Record but is included in the Original Record of the TCE action as document "6".

## Prior Decisions

During a hearing on October 17, 2014, a request for consolidation of the Pipeline Easement action and TCE action was made by the Lauchles, who argued that the relevant issues in both matters were substantially the same. N.T. at 2-6, R.R. 52a, 56a. During that October 17, 2014 hearing, the common pleas court directed that the cases be consolidated. N.T. at 7, R.R. at 57a. However, no formal order was entered by the common pleas court. These matters were, nevertheless, heard together and decided together. See UGI's Brief at 6; Lauchles' Brief at 7; see also Lauchles' Brief at Appendix A.[5]

Thereafter, by Opinion and Order of the common pleas court, dated November 7, 2014, (Opinion and Order) the common pleas court overruled, denied and dismissed the Lauchles' Answer/Equity Action-Pipeline Easement as untimely; and overruled, denied and dismissed that action on the merits because it held that the taking for the Pipeline Easement was for a public purpose. By way of that same Opinion and Order, the common pleas court also dismissed the Lauchles' Answer/Equity Action-TCE because it held that the taking under the TCE was also for a public purpose and granted the TCE.[6]

On December 8, 2014, the Lauchles filed Notices of Appeal to the common pleas court challenging the common pleas court's Opinion and Order,

---

[5] Consequently, no order solely on UGI's Motion-TCE was issued by the common pleas court.

[6] The Opinion and Order was not incorporated as part of the Reproduced Record. However, the Opinion and Order was referenced in UGI's Brief at page 6 and Lauchles' Brief at page 7. The Opinion and Order is also attached to Lauchles' Brief as "Appendix A".

The Opinion and Order is included in the Original Record of the Pipeline Easement as document "10" and "14" and in the Original Record of the TCE as document "14".

which held that the Lauchles' Action in Equity-Pipeline Easement was untimely; that the takings under the Action in Equity-Pipeline Easement and Action in Equity-TCE were not greater than necessary; and that the takings were for a public purpose.[7]   Notices of Appeal, R.R. at 113a-116a.   On January 21, 2015, the Lauchles filed a "Statement of Matters Complained Of On Appeal".  "Statement of Matters Complained Of On Appeal", R.R. at 118a, 123a.

On March 31, 2015, the Lauchles filed their Reproduced Record and Brief on appeal to this Court bearing the docket numbers for both the Pipeline Easement and the TCE.  By Order dated April 15, 2015, this Court noted that these matters were not consolidated, deemed the Lauchles' Brief filed at both appeals and granted UGI permission to file a single brief bearing both Commonwealth Court docket numbers.[8]

Thereafter, by Order dated September 1, 2015, this Court ordered that both matters be listed for oral argument *seriatim* before a panel of this Court.

The controversy is now before this Court.[9]

---

[7] In connection with the Motion-TCE, the common pleas court held a conference with counsel on October 3, 2014.  At the conference the parties informed the court that they had resolved the Lauchles' objections concerning the amount of the bond and that the sole issue remaining under the Condemnation Petition-TCE is that the TCE is greater than necessary.

[8] The Pipeline Easement appeal is docketed at Commonwealth Court Docket No. 2215 C.D. 2014.  The TCE appeal is docketed at Commonwealth Court Docket No. 2216 C.D. 2014.

[9] This Court's scope of review in an eminent domain case is limited to determining whether the trial court abused its discretion or committed an error of law.  Keener v. Carnegie Natural Gas Company, 629 A.2d 256 (Pa. Cmwlth. 1993).

## ISSUES

The issues, as summarized, are whether the common pleas court abused its discretion or committed an error of law by finding that the Lauchles' Action in Equity-Pipeline Easement was untimely filed; by finding that UGI qualified for the public utility exception under Section 204(a) of the Property Rights Protection Act (PRPA), 26 Pa.C.S. §204(a) for purposes of the Action in Equity-Pipeline Easement and Action in Equity-TCE; and in holding that UGI's easement was not greater than necessary to acquire property rights in connection with the Pipeline Easement?

### Was the Action in Equity Untimely Filed?

The Lauchles argued that they properly filed their Action in Equity-Pipeline Easement. Lauchles' Brief at 13. The Lauchles identified that UGI filed its Motion-Pipeline Easement on August 19, 2014, and that the common pleas court issued the August 26, 2014 Order approving the Condemnation Petition-Pipeline Easement.

Thereafter, on August 27, 2014, the Lauchles' counsel mailed a copy of their Action in Equity-Pipeline Easement to the prothonotary of the common pleas court, which was filed on August 29, 2014, or ten (10) days after UGI's Motion-Pipeline Easement was filed and three (3) days after the common pleas court order that granted the Condemnation Petition-Pipeline Easement. Motion-Pipeline Easement, R.R. at 13a, August 26, 2014 Order, R.R. at 23a, Action in Equity-Pipeline Easement, R.R. at 24a-27a. Consequently, the Lauchles argue their filing was timely.

UGI, however, asserted that the Lauchles did not timely respond to UGI's Condemnation Petition-Pipeline Easement within the ten-day period set forth in Section 1511(g) of the Business Corporation Law of 1988, 15 Pa.C.S. §1511(g). UGI identified that its Condemnation Petition-Pipeline Easement was filed on July 15, 2014, and served on the Lauchles on July 22, 2014. Lycoming County Prothonotary Complete Case History, Affidavit of Service filed by Matthew Troxell, R.R. at 2a. UGI further argued that it held off filing its request for common pleas court approval of the relief sought in its Condemnation Petition-Pipeline Easement until August 19, 2014, or twenty-nine (29) days from service of the Condemnation Petition-Pipeline Easement, before it filed its request for the common pleas court approval of the relief sought. See generally Lycoming County Prothonotary Complete Case History, R.R. at 2a.

Section 1511(g) of the Business Corporation Law of 1988, 15 Pa.C.S. §1511(g) states in pertinent part that:

> (i)…the [interested party] may make a[n] … application to the appropriate court for an order directing the filing of a bond to the Commonwealth…. The application shall be accompanied by the bond and a certified copy of the resolution of condemnation.
> …
> (ii)…written notice of the filing of the application under subparagraph (i) shall be sent to such party by mail, or otherwise, at least ten days prior to the consideration thereof by the court.

15 Pa.C.S. §1511(g).

In the current controversy, the Lauchles were personally served at their residence on July 19, 2014, with Condemnation Petition-Pipeline Easement. Lycoming County Prothonotary Complete Case History, Affidavit of Service filed by Matthew Troxell, R.R. at 2a; Lauchles' Brief, Appendix A at 3. The Lauchles

7

did not file an answer or objection to UGI's Condemnation Petition-Pipeline Easement within ten (10) days, or otherwise as prescribed by 15 Pa.C.S. §1511(g).

Further, UGI agreed to an extension of time for the Lauchles to respond to the Condemnation Petition-Pipeline Easement as requested by the Lauchles.  Condemnation Petition at 2, See also Exhibit D of Motion-Condemnation Petition, R.R. at 14a.  That extension terminated on August 16, 2014, after the Lauchles declined to retain counsel.  R.R. at 14a, Exhibit D.[10]

UGI thereafter waited until August 19, 2014, thirty-four (34) days, before filing their Motion-Condemnation Petition.  See Lycoming County Prothonotary Complete Case History, R.R. at 2a; Lauchles' Brief, Appendix A at 3.  Only after the common pleas court entered its August 26, 2014 Order, which approved the condemnation and bond, did the Lauchles even react by filing their Answers to the Pipeline Easement and TCE.  See, e.g., Answer/Equity Action-Pipeline Easement, R.R. at 24a-27a, Answer/Equity Action-TCE, R.R. at 47a-50a; see also Motion-Pipeline Easement, R.R. at 14a, Motion-TCE Original Record of the TCE action at document "6".

Where a statute is effective and the words are clear, the Court is precluded from holding otherwise.  Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b).  See also, Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Scioli-Turco Post 593, V.F.W., 668 A.2d 1207 (Pa. Cmwlth. 1995).  (The Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47

---

[10] Exhibit D cited to in the R.R. at 14a was not contained within the Reproduced Record. However, it is attached as "Exhibit D" to the Motion-Condemnation Petition as document "3" in the Original Record of the Pipeline Easement action.

P.S. §§1–101–10–1001, was revised which provided a liquor licensee with the option to choose between daylight savings time and eastern standard time when setting its hours of operation. The Commonwealth Court acknowledged that giving this option to licensees would cause the Bureau enforcement problems. However, the Court nevertheless held that when a statute is effective and the words are clear, the Court is precluded from holding otherwise (citing Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b)).

In the current controversy, the statute required service of the filing of the application and further required *at least* ten (10) days after such service before requesting consideration of the motion by the court. Here, service of the Condemnation Petition-Pipeline Easement upon the Lauchles was by personal service, evidenced by an affidavit of that service filed on July 22, 2014. Lycoming County Prothonotary Complete Case History, Affidavit of Service filed by Matthew Troxell, R.R. at 2a; UGI's Brief at 6, Lauchles' Brief at 7, Appendix "A" at 3.[11]

UGI waited not only the required ten (10) days after service under statute prior to filing their Motion-Pipeline Easement, they waited an *additional* twenty-four (24) days, or *thirty-four* (34) days overall for the Lauchles to respond before requesting the court to act on UGI's Motion-Pipeline Easement. Again, it was only after the court entered the order and approved the condemnation petition and bond that the Lauchles acted.

---

[11] See also Opinion and Order in the Original Record of the Pipeline Easement as document "10" and "14" and in the Original Record of the TCE as document "14".

There is no question that the Lauchles failed to act timely under the statute.  However, still assuming arguendo that the Lauchles' action was timely filed, their appeal fails.


**Does UGI Fall Under the Public Utility Exception of the Pennsylvania Property Rights Protection Act[12] (PRPA)?**

Lauchles argued that condemnation of their land for private enterprise was prohibited by Section 204(a) of the PRPA.  26 Pa.C.S. §204(a).  The Lauchles asserted that UGI's condemnation for a Pipeline Easement and TCE are not for a valid, public purpose, but rather for a private entity known as the "Panda Power Fund".  Lauchles' Brief at 12.

Lauchles asserted that UGI does not fall within the public utility exemption of the PRPA[13] as that applies only to the definition of a public utility corporation as defined in Section 102 of the Public Utility Code, 66 Pa.C.S. §102[14];

---

[12] 26 Pa.C.S. §§201-207.

[13] 26 Pa.C.S. §204(b).

[14] Section 102 of the Public Utility Code provides in pertinent part:
"Public utility."
(1) Any person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for:
(i) Producing, generating, transmitting, distributing or furnishing natural or artificial gas, electricity, or steam for the production of light, heat, or power to or for the public for compensation.
(ii) Diverting, developing, pumping, impounding, distributing, or furnishing water to or for the public for compensation.
(iii) Transporting passengers or property as a common carrier.
(iv) Use as a canal, turnpike, tunnel, bridge, wharf, and the like for the public for compensation.
(v) Transporting or conveying natural or artificial gas, crude oil, gasoline, or petroleum products, materials for refrigeration, or oxygen or

**(Footnote continued on next page…)**

10

**(continued…)**

nitrogen, or other fluid substance, by pipeline or conduit, for the public for compensation.

(vi) Conveying or transmitting messages or communications, except as set forth in paragraph (2)(iv), by telephone or telegraph or domestic public land mobile radio service including, but not limited to, point-to-point microwave radio service for the public for compensation.

(vii) Sewage collection, treatment, or disposal for the public for compensation.

(viii) Providing limousine service in a county of the second class pursuant to subchapter B of Chapter 11 (relating to limousine service in counties of the second class).

(2) The term does not include:

(i) Any person or corporation, not otherwise a public utility, who or which furnishes service only to himself or itself.

(ii) Any bona fide cooperative association which furnishes service only to its stockholders or members on a nonprofit basis.

(iii) Any producer of natural gas not engaged in distributing such gas directly to the public for compensation.

(iv) Any person or corporation, not otherwise a public utility, who or which furnishes mobile domestic cellular radio telecommunications service.

(v) Any building or facility owner/operators who hold ownership over and manage the internal distribution system serving such building or facility and who supply electric power and other related electric power services to occupants of the building or facility.

(vi) Electric generation supplier companies, except for the limited purposes as described in sections 2809 (relating to requirements for electric generation suppliers) and 2810 (relating to revenue neutral reconciliation).

(3) For the purposes of sections 2702 (relating to construction, relocation, suspension and abolition of crossings), 2703 (relating to ejectment in crossing cases) and 2704 (relating to compensation for damages occasioned by construction, relocation or abolition of crossings) and those portions of sections 1501 (relating to character of service and facilities), 1505 (relating to proper service and facilities established on complaint) and 1508 (relating to reports of accidents), as those sections or portions thereof relate to safety only, a municipal authority or transportation authority organized under the laws of this Commonwealth shall be considered a public utility when it owns or operates, for the carriage of passengers or goods by rail, a line of railroad composed of lines formerly owned or operated by the Pennsylvania Railroad, the Penn-Central

**(Footnote continued on next page…)**

that such exemption applies only when a public utility is providing the "natural gas" service to the public. Lauchles' Brief at 12.

Lauchles argued that, as admitted by UGI, the natural gas was to be supplied to Panda Power Fund, a private entity. Consequently, Lauchles argued that UGI's condemnation for this Pipeline Easement and TCE did not fall within the exemption as defined in Section 102 of the Public Utility Code[15]; that such condemnation was for a private purpose and prohibited; and that Panda Power Fund was not a public utility.

To this end, the Lauchles argued that UGI's sought-after taking was not for serving the public but was an acquisition sought to serve the Moxie/Panda Electric Generation Plant.[16] UGI Press Release, August 28, 2014, UGI Penn Natural Gas to Begin Infrastructure Project in Lycoming County, http://new.ugi.com/press/ugi-penn-natural-gas-to-begin-infrastructure-project-in-lycoming-county/ (last visited December 16, 2015), R.R. at 150a; Lauchles' Brief at 19. Lauchles stated that UGI admitted in its discovery responses that the proposed pipeline was to be constructed to supply natural gas to the electric generation facility constructed by the Moxie/Panda Electric Generation Plant.

_____

**(continued…)**

Transportation Company, the Reading Company or the Consolidated Rail Corporation.

[14] 66 Pa.C.S. §102.

[15] 66 Pa.C.S. §102.

[16] Panda Power Fund was the successor to Moxie Patriot LLC. R.R. at 130a, 145a; Lauchles' Brief at 19.

12

Interrogatories Directed to Defendant, UGI Penn Natural Gas, Inc. at 7, R.R. at 130a.

In support of the Lauchles' argument that Section 204(a) of PRPA applied here ("the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited"), the Lauchles relied upon Reading Area Water Authority v. Schuylkill River Greenway Assn'n., 100 A.3d 572 (Pa. 2014) ("[B]ecause eminent domain is in derogation of private rights, any legislative authority for its use must be strictly construed in favor of the landowner"). Id. at 579.

The Lauchles' position is that the explicit language of Section 204(a) of PRPA and the intent of the Pennsylvania Supreme Court in Reading Area Water Authority specifically prohibited this use for the private enterprise of the Moxie/Panda Electric Generation Plant.

In opposition, UGI argued that it qualified for the public utility exemption under Section 204(b) of PRPA. 26 Pa.C.S. §204(b). UGI argued that Section 204(b)(2)(i) of PRPA, 26 Pa.C.S. §204(b)(2)(i), clearly states that the prohibition in Section 204(a) against "tak[ing] private property in order to use it for a private enterprise," does not apply when "(2) the property is taken by, to the extent the party has the power of eminent domain, transferred or leased to any of the following: (i) a "public utility" as defined in Section 102 of the Public Utility Code. 66 Pa.C.S. §102.

UGI also claimed there is a distinction between Reading Area Water Authority and the controversy before this Court. In Reading Area Water

13

Authority, the water authority was not a public utility and the easements were to be turned over to, and for the sole use of a private party.  Here, UGI is a public utility and was the sole owner of the Pipeline Easement (and TCE).  Reading Area Water Authority, 100 A.2d at 583-84; see also, UGI's Brief at 21.

Further, UGI argued that under Section 1103 of the Business Corporation Law of 1988, a "public utility corporation" is defined as "any domestic or foreign corporation for profit that: (1) is subject to regulation as a public utility by the Pennsylvania Public Utility Commission or an officer or agency of the United States;…"  15 Pa.C.S. §1103.

The uncontroverted facts of record are:  first, that the purpose of the gas line is to supply natural gas to the Moxie/Panda Electric Generation Plant located within UGI's service area; second, UGI is the chosen supplier of natural gas to the geographic area of the Moxie/Panda Electric Generation Plant; third, UGI is a public utility regulated by the PUC; fourth, UGI is and will be the sole owner of the Pipeline Easement and TCE; and fifth, that the Moxie/Panda Electric Generation Plant will not own, operate or control the condemned easement or the natural gas line or related facilities to be placed in the Pipeline Easement.  Interrogatories Directed to Defendant, UGI Penn Natural Gas, Inc. at 4, 7, 9-11, R.R. at 127a, 130a, 132a, 132a-134a.

So, as a public utility, UGI was vested under 15 Pa. C.S. §1511(a) with the power of eminent domain "to take, occupy and condemn property for (2) the transportation of artificial or natural gas" for the public and (3) for "the production, generation, manufacture, transmission, storage, distribution or

14

furnishing of natural artificial gas, . . . " to or for the public. Consequently, UGI falls under the public utility exception of the PRPA. This Court agrees.

### Was UGI's Scope of Easements Greater Than Necessary to Acquire Property Rights in Connection With the Pipeline Easement?

The Lauchles maintain that while UGI admits that the proposed project at issue was for a single, twelve-inch pipeline, approximately eight (8) miles long to serve the Moxie/Panda Electric Generation Plant, UGI sought property rights from the Lauchles for multiple pipelines and for the right to increase the size of the pipeline, if needed, for its intended purpose. Lauchles' Brief at 17.

The Lauchles asserted that a "purported need" for a single pipeline provided no justification for a condemnation of rights for multiple pipelines. Pennsylvania Department of Transportation v. Montgomery Twp., 655 A.2d 1086 (Pa. Cmwlth.), appeal denied, 666 A.2d 1059 (Pa. 1995).

The Lauchles further rely on Winnett v. Carnegie Natural Gas Co., 37 Pa. Super. 204, (1908) for the proposition that where the plural use of the word is used, that plural use grants the utility with the easement the right to lay more than one pipeline. See generally, Winnett. Consequently, the Lauchles argue that UGI's limited need is for a single pipeline as evidenced by its response that the *single* pipeline "should last at least fifty to one hundred years." Interrogatories Directed to Defendant, UGI Penn Natural Gas, Inc. at 9-11, R.R. at 132a- 133a.

UGI admits that it intended to initially install a single gas line within the thirty-foot wide easement for its underground facilities. UGI also admitted that

15

it may install "pipelines" within that easement, using that word to afford UGI the flexibility in the future if it should be determined that additional lines become necessary. UGI's Brief at 24-25. However, UGI asserted that the Lauchles did not challenge the location, scope or size of UGI's easement area, only the extent to which it may be necessary to place additional future lines within that easement. See Eways v. Reading Parking Authority, 124 A.2d 92 (Pa. 1956); Duquesne Light Company v. Upper St. Clair Township, 105 A.2d 287 (Pa. 1954). (The expansion, extension or replacement of a public utility's facilities lies solely within the discretion of company management, absent a showing of palpable bad faith or clear abuse of discretion or power.)

Further, as argued by UGI, the only case cited by Lauchles in support of their position on this issue, Pennsylvania Department of Transportation v. Montgomery Township, 655 A.2d 1086 (Pa. Cmwlth. 1995), is readily distinguishable.

In Montgomery Township, the Pennsylvania Department of Transportation (PennDOT) had filed a declaration of taking to condemn a property which had been deeded to Montgomery Township, but as to which a separate party (a partnership named Kasorex) held a reverter. Montgomery Township, 655 A.2d at 1087. Kasorex filed preliminary objections, and alleged that the condemnation was not for a valid public purpose and was arbitrary, capricious and in bad faith, based partly on the fact that the condemnation papers were filed even though PennDOT "had not definitely chosen" to construct any of its future highways or roads through the subject property. Montgomery Township, 655 A.2d at 1089.

16

On appeal in <u>Montgomery Township</u>, this Court affirmed, and noted that the condemnation was premature, insofar as PennDOT had not yet even completed the studies necessary to finalize the location of the road, noting that a condemnor "may acquire public land prior to the time that it is actually needed," but that "[Penn]DOT has not shown that the early condemnation was necessary and in good faith for future transportation purpose within a reasonable period of time." <u>Montgomery Township</u>, 655 A.2d at 1089, 1091. So, PennDOT's condemnation of land *before* it chose to use the land was invalid.

In the controversy before this Court, UGI seeks the Pipeline Easement and TCE condemnations in connection with an active project, which was immediately going forward, and as to which there was no future uncertainty or doubt. In addition, the record is devoid of any evidence that these takings were merely prospective in nature, for some future but as-of-yet not definitively determined public project.

This Court must conclude there is no evidence of record that UGI's scope of taking was greater than necessary to acquire the property rights in connection with the Pipeline Easement.

Accordingly, the decision of the common pleas court is affirmed insofar as it determined that the Lauchles' Answer/Action in Equity was untimely, and even if timely, their challenges are meritless.

_____
BERNARD L. McGINLEY, Judge

Judge McCullough dissents.

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation of Easement : 
and Right of Way Across lands of : 
Curtis R. Lauchle and Terri L. : 
Lauchle, husband and wife, by : 
UGI Penn Natural Gas, Inc. For : 
Public Purposes : 
 : 
Appeal of:  Curtis R. and Terri L. :     No. 2215 C.D. 2014
Lauchle :

# **O R D E R**

AND NOW, this 5th day of January, 2016, the Order of the Court of Common Pleas of Lycoming County, Pennsylvania is affirmed.

_____
BERNARD L. McGINLEY, Judge